JOSÉ A. ORTIZ, Plaintiff and Appellee, *v.* HEIRS OF J. SERRALLÉS ET AL. and FERNANDO BANCHS, Defendants and the latter Appellant.

No. 279.     Decided November 18, 1963.

*José N. Dapena* and *Leopoldo Tormes* for appellant. *Miguel A. Ruiz* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, and Mr. Justice Rigau.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On September 13, 1958 appellant Fernando Banchs was the foreman of the Esperanza Estate of Wirshing and Company, and as such foreman he had under his custody a certain tractor which was used in the cultivation of sugarcane (Tr. 141 and 147). Appellant himself testifies that during the night of September 13 to 14 of said year, an employee of the company by name Acisclo Laviera Gual called at his house and asked appellant's permission to use the tractor to pull out a station wagon belonging to Juan Rivera, which was stuck in a ditch. Appellant authorized the employee Acisclo Laviera Gual to use said tractor as a favor to Juan Rivera to pull out the station wagon from the ditch. On his way back the tractor collided with a motorcycle driven by appellee José A. Ortiz, causing damages to the motorcycle

as well as to the person. It appears that Sucesión J. Serrallés was sued in the belief that the latter was the tractor's owner and the principal of the foreman within the theory of the *culpa in eligendo*, that is, the diligence in choosing the person who is going to perform certain functions in connection with the disposition of the thing, property of the principal, which may cause damages to other persons.

The evidence having disregarded the possibility of a *culpa in eligendo* because the juridical person who, in reality of law, had been appointed by the manager had not been sued, we have only to consider the direct liability between the third person who suffers the damage and the manager who violates the paternal rule of the custody of the thing. In this case the lack of diligence of a good father of a family consisted in having permitted a person to drive a tractor on a public highway without license and without the necessary skill, because although the evidence showed that Acisclo Laviera had experience in driving the tractor within the premises of Wirshing & Company's farms, he did not have the skill to drive it on a public highway. Furthermore, there are certain indications in the evidence that at the time of driving the tractor he was under the influence of intoxicating liquor. The liability of the person who performs an act of administration in excess of his agency is clearly defined in the modern gloss of the Civil Code: Borrell Macia, *Responsabilidades Derivadas de la Culpa Extracontractual Civil* 176–183 (Bosch 2d ed., 1958).

Eliminating from said study the marginal notes of comparative law, foreign case law and texts, but using the author's own words, the doctrinal conclusion could be summarized as follows: Juridical persons, product of an abstraction, of a creation of law, cannot act by themselves; they must always do it through such physical persons who integrate their organs, who are their legal representatives and, this being so, it seems that they should be directly liable for

the actions which are deemed to be performed in the name of the juridical person.

The organs thereof, the physical persons who act in their name, do so under the authority of their agency; they exercise a representation which is granted to them and it seems logical that said agency, said representation should be only limited to the scope granted to them, and it can never be deemed that powers have been granted to them on the margin of the law, since besides this being so, the responsibility of not complying with them would be evident.

On the other hand, since juridical persons avail themselves of the activity of natural persons and receive the advantages that said actions afford, they must also bear the disadvantages which, as a counterpart of said benefit, are caused by the fraudulent or faulty action of the former (*qui sentit commodum sentire debet incommodum*), because if it were understood that the juridical persons, being incapable of committing any fault are not subject to extra-contractual liability, it would have to be admitted, congruently, that they cannot, for example, incur delay in the performance of their conventional obligations, nor in their obligation to compensate for the breach of contract, nor in any of the other contractual liabilities derived from the fault.

This does not imply that if an association, for example, must compensate another person as a consequence of damages caused by the fault or negligence of its agents, of its manager, of its Board of Directors, the stockholders who have not taken part in the agreement which is the cause of the compensation, in turn demand it for the association or on their own interest, from the guilty natural person.

If on the one hand the partnership managers must govern, rule and take care thereof, for such is the equivalent of management, on the other hand they shall have the obligations proper of agents since the rules of agency are, as

stated in the judgment of January 8, 1910 (Supreme Court of Spain), definite on this point. Section 1718 of the Civil Code (§ 1609 ours) provides the principal's obligation who has accepted the agency to execute it; § 1719 (§ 1610 ours) establishes that in the absence of instructions the agent shall do all that which, according to the character of the business, would be done by a good father of a family.

The principle which defines the obligation to repair the damage caused by the fault or negligence would not be accomplished if the liabilities which should be assumed by the disabled or juridical person with respect to the third person could not be relayed to such persons who in the fulfillment of their duties to supply said incapacity have committed deceit, fault or negligence in relation to the vigilance, custody and representation which was entrusted to them. Furthermore, § 1101 (§ 1054 ours) of the Civil Code establishes that "Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby," and complementing it, § 1104 (§ 1057 ours) adds: "The fault or negligence of the debtor consists of the omission of the steps which may be required by the character of the obligation, and which may pertain to the circumstances of the persons, time, and place. Should the obligation not state what conduct is to be observed in its fulfillment, that observed by a good father of a family shall be required."

■■ Up to here the annotation of Borrell Macia. Irrespective of its tangency to any form of labor or negotiation contract, it is not difficult to conclude that the foreman of a sugar mill, in charge, as he is, of the custody, vigilance, and disposition of the agricultural implements, performs administrative acts which place him within the general scope of agency, and in relation to damages caused to third persons

by his faulty actions binds the sugar company, in the name of which he acts, to repair the damages caused through the error committed by the company in appointing for said position the man who is liable for the faulty act, but in turn, the latter is obliged to answer to the former for the faulty acts performed in excess of the authority of his agency. But, as in the present case, when the direct liability which creates the *culpa in eligendo* is not established, there always remains the direct liability of the person who has acted negligently causing damages to a person, in accordance with § 1802 of our Civil Code. *Pérez* v. *Picó,* 63 P.R.R. 387, 389 (Snyder) (1944).

The judgment of the Superior Court of Puerto Rico, Ponce Part, of February 8, 1960, will be affirmed.